IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.M., *et al.*, | : | CIVIL ACTION |
|              Plaintiffs, | : | |
| | : | No. 14-2131 |
|       v. | : | |
| | : | |
| CHICHESTER SCHOOL DIST. *et al.*, | : | |
|              Defendants. | : | |

**MCHUGH, J.**                                                                                    **FEBRUARY 10, 2015**

**MEMORANDUM OPINION**

I. **Introduction**

This is a civil rights action under Section 1983 brought by the parents of a child suffering from autism asserting two constitutional violations. The Motion before me raises the scope of responsibility owed by a school district to children with special needs as they are being transported to and from school. Although the question is a close one, I am persuaded that the issues presented require a more complete record before I am in a position to issue a definitive ruling on the existence of a "state-created danger," and therefore I will deny the School District's Motion to Dismiss with respect to Plaintiffs' Fourteenth Amendment claim.[1]

II. **Factual Background**

The case arises out of an unfortunate incident in which Plaintiffs allege that their child, K.M., who suffers from autism, sleep apnea, and other health conditions, was left on his school bus asleep at the end of the day. When he awakened, alone, he had prolonged difficulty exiting the bus. According to the complaint, when he finally succeeded, he wandered alone until he was

---

[1] Plaintiffs have consented to dismissal of the School District's Superintendent and Director of Transportation, and by separate Order I am dismissing a school bus driver and bus monitor on the basis of qualified immunity.

found by a stranger, who then left him in the custody of the school's football coach. Plaintiffs allege that because of their son's emotional fragility, this encounter caused a severe anxiety reaction, which has persisted with nightmares, flashbacks, and hallucinations of "a strange man approaching or watching him." First Amended Complaint ¶ 35. The Complaint further alleges that when the incident occurred, the child was not taking medications, but has since been required to undergo an extensive course of psychotropic medication and therapy.

K.M. was enrolled at Marcus Hook Elementary School under an Individualized Education Plan (IEP) created pursuant to the Individuals with Disabilities Education Act (IDEA). The Complaint pleads that appropriate transportation was incorporated within the terms of the Plan, and that the child was to be transported "in a smaller, special education school bus with other children, all of whom were autistic." Complaint at ¶ 16. Ten students diagnosed with autism were transported on the bus, which was staffed with both a driver and a bus monitor. Plaintiffs' son had a regular stop where he would exit at the end of the day, and they allege that neither the driver nor the monitor took action when he failed to exit the bus in accordance with his normal routine.

### III. Plaintiffs' Claims

The defense is correct that the structure of the Complaint is not ideal. Although it is clear that Plaintiffs assert rights under both the Fourth and Fourteenth Amendments as well as municipal liability under *Monell*, the Complaint is somewhat awkwardly pled over two Counts, making it difficult to analyze. In fairness to Plaintiffs, however, the Second Count incorporates both the First Count and all of the underlying factual allegations, and when read as a whole, the claims emerge from the document with sufficient clarity to be understood. Following my review of the parties' respective arguments, I agree with the School District that Plaintiffs fail to state a

claim under the Fourth Amendment, but conclude that discovery must proceed with respect to the *Monell* state-created danger claim under the Fourteenth Amendment.

        *a. Alleged Fourth Amendment Violation*

Plaintiffs first seek to characterize their son's confinement to the school bus as an unlawful "seizure" in violation of the Fourth Amendment.[2] Upon review of the relevant precedent, I am persuaded that this claim lacks merit.

The Third Circuit articulated a definition for seizure in *Shuman ex rel Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)): "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.' " The Fourth Amendment's prohibition of unreasonable seizures undoubtedly applies in the school context. *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985). However, for government conduct to amount to a seizure, it must be intentional. In *Bower v. County of Inyo*, 489 U.S. 593 (1989), the Supreme Court considered whether the police had seized a suspect by setting up a roadblock into which he drove his car. In ruling that the plaintiffs had adequately alleged a seizure, the Court explained:

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking … but the detention or taking itself must be willful. … [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement … but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* at 596–97. This language from *Bower* led the Third Circuit later to conclude: "[W]e think it reasonable to read *Bower* as focusing on the objective intent of officials to use force to effectuate

---

[2] Plaintiffs' arguments in support of their Fourth Amendment claim are set forth in, and incorporated from, their brief in opposition to the companion Motion to Dismiss by the bus driver and monitor.

a seizure and the subsequent seizure flowing from the use of that force." *In re City of Philadelphia Litigation*, 158 F.3d 711, 721–22 (3d Cir. 1998).

In the sole case Plaintiffs cite in support of this claim, school officials had intentionally restricted a student's freedom of movement by deliberately confining her in a conference room. *Shuman*, 422 F.3d at 144–45. Plaintiffs here have not alleged any "intentional acquisition of physical control," because there is no suggestion that the driver or attendant meant to confine K.M. in the bus. The willfulness required by *Bower* is lacking, and as a result the Fourth Amendment Claim must be dismissed.

      *b. Alleged Fourteenth Amendment Violation*

Although the Complaint is less than explicit, Plaintiffs' response to the pending Motion makes clear that their Fourteenth Amendment Claim is grounded in the "state-created danger" doctrine. The rule was first enunciated by the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), where it held that government actors could be liable for violating a person's substantive due process rights by placing the person in harm's way. Specifically, the court there found that plaintiffs had raised a triable issue of fact when they alleged police separated a severely inebriated woman from her companion and then abandoned her to find her own way home. *Id.* at 1211. The woman did not reach home, but instead was found the next morning "unconscious at the bottom of an embankment," suffering from hypothermia, anoxia, and permanent brain damage. *Id.* at 1203.

More recently, the Third Circuit articulated the elements of a state-created danger claim as follows:

    (1) "the harm ultimately caused was foreseeable and fairly direct;"
    (2) a state actor acted with a degree of culpability that shocks the conscience;
    (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons

> subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizens or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006).

I find Plaintiffs have alleged sufficient facts to survive the motion to dismiss their state-created danger claim. The first, third, and fourth elements of the *Bright* factors are undoubtedly met by the allegations in the Complaint. Although K.M. was not in the custody of the Defendant School District, Plaintiffs plead that the specific mode of transportation was part of the IEP governing their child's attendance at school. K.M.'s particular needs and vulnerabilities, as well as the needs of the other autistic students transported on the same bus, were certainly familiar to a large school district such as Chichester. The Pennsylvania Department of Education maintains an online training module that specifically addresses the needs of autistic students,[3] and the federal government, through entities such as the National Institute of Mental Health, has widely addressed the challenges faced by autistic children and identified the kinds of specific challenges faced by K.M., including sleep disorders, distractibility, and susceptibility to emotional distress.[4] The combination of what educators know generally about autism and what the School District knew about K.M. individually, suffice to establish: that the harm was foreseeable and fairly direct; that the close and direct relationship between the District and K.M. identified him as a foreseeable victim; and that state authority was used in a way that created a danger.[5]

---

[3] *Autism*, PENNSYLVANIA DEPARTMENT OF EDUCATION, http://www.pattan.net/category/Educational%20Initiatives/Autism (last visited Feb. 9, 2015).

[4] *E.g.*, *A Parent's Guide to Autism Spectrum Disorder,* NATIONAL INSTITUTE OF MENTAL HEALTH (2011), http://www.nimh.nih.gov/health/publications/a-parents-guide-to-autism-spectrum-disorder/index.shtml

[5] This element is addressed in more detail below, in the discussion of Plaintiffs' *Monell* theory.

Whether the School District engaged in conduct that shocks the conscience in this context is a far closer question. Precisely what conduct will shock the conscience differs according to context. In *Sanford v. Stiles*, the Third Circuit explained:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient.

456 F.3d 298, 309 (3d Cir. 2006); *see also Rivas v. City of Passaic*, 365 F.3d 181, 195 (3d Cir. 2004) ("conduct that "shocks the conscience" under one set of circumstances may not have the same effect under a different set of circumstances").

I am persuaded that on the facts of this case, which involves the adequacy of the School District's systemic approach to protecting a specific population of at-risk students, the applicable standard is deliberate indifference. According to the Court of Appeals, the controlling question then becomes whether the School District can be said to have "consciously disregarded a great risk of harm." *Sanford*, 456 F.3d at 310. To determine whether conduct shocks the conscience necessarily requires an evaluation of what is at risk. Plaintiffs allege that Chichester School District lacked policies, procedures, and training needed to protect students rendered particularly vulnerable because of autism. The nature of autism has a bearing on both cause and effect, encompassing not only the likelihood that such students will find themselves in need of protection, but also the enhanced potential for harm that can follow if it is not provided. In K.M.'s case, his autism made it far more likely that he would fall asleep and fail to exit the bus at his assigned stop, and the emotional fragility that afflicts many autistic children made it far more likely that he would experience a profound and prolonged reaction. In short, the magnitude of both the risk and the harm must be evaluated against the reality of what it means to be autistic.

Other decisions considering state-created danger claims in the school context provide helpful benchmarks for comparison.  In *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 904 (3d Cir. 1997), a woman with a history of mental illness entered a classroom through a door that contractors had propped open and fatally shot a teacher.  The Third Circuit dismissed her husband's state-created danger claim.  With respect to the second required element, the court explained, "the state's actions must evince a willingness to ignore a foreseeable danger or risk," and in the case before the court "[d]efendants could not have been aware of the danger posed by Stovall, nor could they have foreseen it." *Id.* at 910.  Therefore, "[a]s a matter of law they cannot have acted with willful disregard for Diane Morse's safety."  Here, in contrast, the risk of leaving autistic children unattended was directly foreseeable.

In *Maxwell v. Sch. Dist. of Phila.*, 53 F. Supp. 2d. 787 (E.D. Pa. 1999), my colleague Judge Brody  denied a motion to dismiss a state-created danger claim where plaintiff alleged that a substitute teacher was aware of, but ignored, a sexual assault against a special education student in her classroom. On one level, the facts here are weaker for Plaintiffs than in *Maxwell*, because K.M.'s actual peril in the moment was not known to the School District, only the general risks affecting those with autism.  On the other hand, the assault in *Maxwell* was a random act, whereas here the transportation of K.M. as well as the other autistic students was a daily responsibility of the School District, and the District had ample time to plan and provide for their needs.  Another case from this district, *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615 (E.D. Pa. Jan. 22, 2002) more closely approaches the facts here. In *Susavage*, a state-created danger claim was recognized where attendants transporting a child with special needs misused a safety harness, causing fatal injury.  Chief Judge Giles of this court reasoned that because the defendant "was aware of [the student's] medical condition which

7

prevented her from sitting upright or riding unattended, failure to insure a safe transport system for [the student] prior to subjecting her to the risk of foreseeable serious injury could be viewed as … deliberate indifference." *Id.* at 15.

The case before me is a great deal more like *Maxwell* and *Susavage* than it is like *Morse*. As in *Susavage*, the School District here knew that K.M. had special supervision needs by virtue of his IEP and special transportation arrangement, and purportedly was aware of his medical condition making him apt to fall asleep.  Given the profound needs of Plaintiffs' child, as well as the needs of the other students on the bus, if the evidence were to show that the School District had no policies or procedures to protect them, or provided no training designed to meet their needs, a reasonable jury could find deliberate indifference that is shocking.

Therefore, I find that Plaintiffs have stated a state-created danger claim.

    c. *Adequacy of Plaintiffs' Monell Claim*

The School District further contends that Plaintiffs' claim for failure to train and promulgate procedures should be dismissed because it does not meet the requirements of *City of Canton v. Harris*, 489 U.S. 378 (1989).  It has been clear since *Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658 (1978) that governmental entities cannot be held liable for constitutional violations caused by their employees under the theory of *respondeat superior*.  As the Supreme Court restated the rule in *City of Canton*, "a municipality can be found liable under § 1983 only where the municipality *itself* caused the constitutional violation at issue."  489 U.S. at 385.  However, even as the Court emphasized the limits of municipal liability, it also made clear that a constitutional violation can be proven if systemic governmental failure to train its employees "amounts to deliberate indifference to the rights of persons with whom the [public employees] come into contact." 489 U.S. at 388.

In *City of Canton*, the Court cautioned that "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 390. The Court nonetheless recognized that such a violation could exist if "the need for more or different training is … obvious." *Id.* In the context of cases alleging municipal liability, the Third Circuit has adopted a three-part standard:

> [I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown what (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). In addition, the government entity's deliberate indifference must have a sufficiently close causal relationship to the constitutional violation. *City of Canton*, 489 U.S. at 391 ("for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.").

Defendants contend that Plaintiffs' complaint fails to allege a plausible set of facts sufficient to carry these stringent requirements. They argue that checking a school bus for sleeping children before "locking it up for the night" is "common sense," rendering an alleged lack of training irrelevant to K.M.'s injuries. Chichester School District's Motion to Dismiss at 6.

I disagree, and I find that Plaintiffs have pleaded facts sufficient to meet the requirements of *City of Canton*. Preliminarily, I feel compelled to observe that the need to check the bus was apparently not entirely self-evident—as allegedly neither the driver nor aide did so. Given the special needs of the children on this particular bus, it seems indisputable that they require special

9

supervision, and the presence of the aide on the bus and Plaintiff K.M.'s Individualized Education Plan would seem to demonstrate the School District's awareness. Yet, according to Plaintiffs' allegations, which I must accept as true for the purposes of a motion to dismiss, the school failed to establish systemic policies and procedures necessary to safeguard this highly vulnerable group of students.

I also conclude that Plaintiffs have adequately alleged that the School District's failure to train and promulgate policies could be deemed to have caused the alleged deprivation of K.M.'s rights. Under the facts as alleged, K.M.'s injuries flowed from at least two different failures by school staff: the failure to notice when K.M. did not leave the bus at his scheduled stop, and the failure to thoroughly search the bus for lingering or sleeping students before locking it at night. K.M.'s alleged deprivation of rights could be deemed a direct consequence of not developing in the first instance, and inculcating in staff, systemic practices to prevent such oversights. Plaintiffs are entitled to conduct discovery of their remaining claim against the School District.

An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Court Judge